J-S37001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1570 EDA 2021 |

Appeal from the Order Entered July 14, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000225-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED JANUARY 5, 2022**

T.S., the natural mother of one-year-old A.S.S. ("Child"), appeals from the order terminating her parental rights to Child. Mother argues she was not provided notice of the termination hearing and that the trial court erred in terminating her parental rights. We affirm.

Child was born with cocaine in her system. As a result, Child was immediately removed from Mother's custody and placed with her maternal grandmother. Mother's parental rights to her previous children had already been terminated due to her drug abuse issues.

The Philadelphia Department of Human Services ("DHS") provided Mother with a plan to allow her to resume custody of Child. Among the

---

[*] Former Justice specially assigned to the Superior Court.

components of the plan were requirements that Mother participate in mental health and drug abuse treatment programs, attend parenting classes, obtain stable housing, and visit Child regularly. One year after Child's birth, Mother had not complied with any of the plan's requirements. DHS then filed a petition to terminate Mother's parental rights involuntarily.

DHS sent Mother copies of the petition through USPS certified mail and UPS overnight delivery on May 7, 2021. DHS records indicated that neither copy was returned to DHS, and that as of June 1, 2021, the USPS certified mail was still listed as "in transit."

A hearing was held on the petition on July 14, 2021. Mother's appointed counsel was present, but Mother was not. Mother's counsel objected to the hearing, contending that DHS had not established it had made a good faith effort at serving Mother with notice of the hearing. The trial court overruled counsel's objection, and the hearing proceeded. After taking testimony from DHS witnesses, the court terminated Mother's parental rights to Child, and this timely appeal followed.

Mother first claims the trial court erred in overruling counsel's objection that DHS had failed to establish a good faith effort to serve Mother with notice of the hearing. DHS bore the burden of proving that it had properly served Mother. **See In re K.B.**, 763 A.2d 436, 439 (Pa. Super. 2000). The Pennsylvania Adoption Act requires such notice be provided at least ten days before the hearing. **See** 23 Pa.C.S.A. § 2513(b). DHS was permitted to

- 2 -

provide service "by registered mail to [Mother's] last known address." ***Id***. It is undisputed that DHS attempted service at Mother's last known address. However, it is similarly undisputed that DHS did not attempt service by registered mail. ***See*** N.T., 7/14/21, at 7.

Instead, DHS attempted service through certified mail, supplemented by UPS overnight delivery. ***See id***., at 7-8. Certified mail and registered mail are two different services provided by the USPS. ***See In re Maynard***, 473 A.2d 1084, 1085 n.2 (Pa.Super. 1984); ***compare*** https://faq.usps.com/s/article/Registered-Mail-The-Basics, last accessed 12/21/2021, ***with*** https://faq.usps.com/s/article/What-is-Certified-Mail, last accessed 12/21/2021. Mother's counsel highlighted this distinction while objecting to the hearing, but acknowledges in his brief on appeal that Orphans' Court Rule 15.6(a) allowed DHS to utilize certified mail. ***See*** Appellant's Brief, at 6.

On appeal, Mother contends that DHS did not establish that the certified mail was actually delivered to Mother. As such, Mother asserts, DHS failed to establish it made a good faith effort at serving Mother with notice of the hearing. Certainly, DHS's evidence on this point was far from conclusive. No testimony was provided on this issue, just statements made by counsel on the record. However, Mother does not object to the lack of sworn testimony on the issue.

Nor does Mother specifically object to other irregularities in the record. For example, counsel for DHS indicated that she had a copy of the certified mail that was sent to Mother. **See** N.T., 7/14/21, at 11. This copy presumably included the mailing receipt provided by USPS for certified mail. She further asserted that "the USPS website indicates that as of June 1, 2021[,] it was still in transit." **Id**. However, counsel for DHS did not move these documents into evidence, and they are not in the certified record on appeal.

In contrast, the UPS overnight proof of service is in the certified record, but there is no dispute that service by UPS does not satisfy DHS's burden for actual service. **See In re Adoption of K.M.D.**, 261 A.3d 1055, 1063 (Pa. Super. 2021) (requiring strict compliance with the mandates of section 2513(b) and Pa.O.C.R. 15.6). Nevertheless, Mother does not specifically challenge DHS's assertion that it attempted service by certified mail, the absence of the mailing receipt or tracking number report, or the fact that, as of the date of the hearing, July 14, 2021, DHS only asserted that as of June 1, 2021, the certified mail was not marked as delivered in the tracking number report.

Under these circumstances, we are left with nothing to review but counsel for DHS's assertions. The trial court credited these assertions. We are in no position to second-guess the trial court's credibility determination on this issue. We therefore accept the trial court's finding that DHS attempted service through certified mail.

While the court did not expressly find that DHS's attempted service through certified mail failed, the court explicitly found that DHS had made good faith efforts at effectuating service. Under the unique circumstances of this case, we cannot conclude the trial court abused its discretion in finding DHS made a good faith effort. Mother made no effort to maintain contact with DHS throughout the dependency proceedings, and DHS made efforts to locate her. It attempted to provide service through certified mail and by UPS overnight service. While the evidence in the certified record of DHS's good faith efforts is scant, it is sufficient to support the trial court's conclusion. Accordingly, we conclude Mother's first issue on appeal merits no relief.

Next, Mother contends the trial court erred in finding that DHS had presented sufficient evidence to establish statutory grounds for termination of her parental rights. We apply a deferential standard of review in appeals from orders terminating parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

DHS bore the burden of proving, by clear and convincing evidence, that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and internal quotation marks omitted).

Here, the court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We conclude the court's decision is justified pursuant to Section 2511(a)(8) and (b).

Under Section 2511(a)(8), DHS was required to produce clear and convincing evidence that: "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003). In addition, we have explained the following:

> Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the [child]'s removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of Agency services.

*In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotation marks omitted).

A parent is required "to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002) (citation and quotation marks omitted). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*

Here, Mother's argument on appeal focuses on whether DHS established that termination of her parental rights would best serve Child's needs and

welfare. She highlights the lack of communication between DHS's agents and herself as evidence that DHS has not considered Child's bond with Mother. **See** Appellant's Brief, at 9. And she reiterates her complaints about the manner she was served notice of the hearing. **See id**. We see no merit to these arguments.

Mother was given a plan for regaining custody of Child immediately after Child was born with cocaine in her system. **See** N.T., 7/14/21, at 12-13. The plan required Mother to seek treatment for her mental health and drug abuse issues, as well as to attend parenting classes and supervised visits with Child. **See id**., at 14. Mother was also required to obtain stable housing. **See id**.

Nearly 16 months after Child was born, Mother had not made any progress on any of the goals in the plan. **See id**., at 14-15. Most alarmingly, Mother had not attended any of the supervised visits with Child that DHS offered or had any other contact with Child. **See id**., at 15-17. Based on this evidence, we do not hesitate to conclude that DHS presented sufficient evidence to justify termination of Mother's rights under Section 2511(a)(8).

In her final argument on appeal, Mother contends the trial court erred in determining that termination was justified under Section 2511(b) of the Adoption Act. Pursuant to Section 2511(b), the trial court was required to examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. **See In re C.M.S.**, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such

as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*., at 1287 (citation omitted).

Our Supreme Court has stated the following:

[I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. . . . In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted).

In a termination of parental rights case, the trial court is required to consider "whatever bonds may exist between the children and [the natural parent], as well as the emotional effect that termination will have upon the children." *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). The extent of any bond analysis necessarily depends on the circumstances of the particular case. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). The panel in *In re K.Z.S.* emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the child and should consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parent. *Id.* at 760 (citation omitted).

Here, we reiterate DHS presented evidence that Mother, by her own volition, has refused *any* contact with Child since Child was removed from

- 9 -

Mother's custody shortly after birth. There is simply no reason to believe that Child has any emotional bond with Mother. Further, DHS presented testimony that Child has no bond with Mother. ***See*** N.T. 7/14/21., at 19. Child calls her maternal grandmother, who has custody of Child, "mom." ***See id***., at 18. Under these circumstances, we can find no abuse of the trial court's discretion or error of law based on the court's finding that termination of Mother's parental rights will best serve the developmental, physical, and emotional needs and welfare of Child. Mother's final issue on appeal merits no relief.

As none of Mother's issues on appeal merit relief, we affirm the order terminating her parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/05/2022

- 10 -